**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **EQUAL EMPLOYMENT** | ) | |
| **OPPORTUNITY COMMISSION,** | ) | |
| | ) | **CIVIL ACTION NO.** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| **EL CHAPARRO, INC. d/b/a** | ) | **JURY TRIAL DEMAND** |
| **EL CHAPARRO TEX-MEX** | ) | |
| **CANTINA,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

## NATURE OF THE ACTION

This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991, to correct unlawful employment practices on the basis of sex and to provide appropriate relief to Bobbie Barnhart, Barbara Patton, Brianna Parker, and Lauryn Sanders ("Claimants"), who were affected by such practices. As alleged with greater particularity in paragraphs 10-78 below, Defendant subjected the Claimants to sexual harassment which created a sexually hostile work environment because of their sex (female) in violation of Title VII. The Claimants were sexually harassed by Defendant's male co-owner who was also Defendant's general manager (hereafter "Owner").

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C.§ 2000e-5(f)(1) and (3) ("Title VII") and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2.      The principal place of business of Defendant is within the jurisdiction of the United States District Court for the Northern District of Georgia.

## PARTIES

3.      Plaintiff, the Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title VII and is expressly authorized to bring this action by Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1) and (3).

4.      At all relevant times, Defendant, El Chaparro, Inc., ("Defendant"), a Georgia corporation, has continuously been doing business in the State of Georgia. Defendant's principal place of business is located in Covington, Newton County, Georgia. At all relevant times, Defendant has continuously had at least 15 employees.

5.      At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 701(b), (g) and (h) of Title VII, 42 U.S.C. §§ 2000e(b), (g) and (h).

## ADMINISTRATIVE PROCEDURES

6.      More than thirty days prior to the institution of this lawsuit, each Claimant filed a charge with the Commission alleging violations of Title VII by Defendant.

7.      On August 28, 2015, the Commission issued to Defendant a Letter of Determination in each Claimant's charge finding reasonable cause to believe that Title VII was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

8.      On October 15, 2015, the Commission issued to Defendant a Notice of Failure of Conciliation in each Claimant's charge advising Defendant that the Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

9.      All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

A.   Bobbie Barnhart

10.     During Bobbie Barnhart's employment with Defendant from approximately May 2012 to September 2014, Defendant has engaged in unlawful employment practices at its Greensboro, Georgia restaurant, in violation of Section 703(a) of Title VII, 42 U.S.C. 2000(e)-2(a). Specifically, Defendant subjected Barnhart to sexual harassment that created a sexually hostile work environment because of her sex (female).

11.     During Barnhart's employment, the Owner made sexual comments to other staff regarding Barnhart. For example, the Owner told staff that Barnhart engaged in sex in the restaurant cooler.

12.     Barnhart became aware that the Owner made sexual comments about her.

13.     Barnhart asked the Owner to stop spreading sexual rumors about her to other staff, but the Owner did not stop.

14.     The Owner also made sexual comments in Barnhart's presence and directly to her. For example, the Owner commented on the size and attractiveness of Barnhart's breasts, buttocks, and body.

15.     The Owner regularly drank from a coffee mug shaped like a female

breast in Barnhart's presence. On at least one occasion, the Owner tried to make Barnhart drink from the mug but she refused.

16.    On several occasions, the Owner showed pictures of himself with his shirt off to Barnhart while commenting about his physique.

17.    From around January until September 2014, approximately three times per month, the Owner showed Barnhart photos of women naked or dressed in lingerie, including pictures of female breasts and genitals.

18.    Throughout Barnhart's employment, the Owner regularly commented on the attractiveness of female customers, including comments about the size of customers' breasts.

19.    At all times, Barnhart was offended by the Owner's sexual comments and conduct.

20.    At all times, Barnhart objected to the Owner's conduct.

21.    On at least one occasion, Barnhart complained of the Owner's conduct to a co-owner of the restaurant, but the sexual harassment continued.

22.    The sexual conduct described above occurred at least weekly and sometimes as often as daily, and continued throughout Barnhart's employment until her separation in September 2014.

23.    Defendant is liable for the practices complained of above because the

conduct was committed by an individual who was a proxy for the employer. Defendant is also liable for the practices complained of above because the Owner who created the sexually hostile work environment was in Barnhart's direct line of supervision.

24.     The effect of the practices complained of above has been to deprive Barnhart of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex (female).

25.     The unlawful employment practices complained of above were intentional.

26.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally-protected rights of Barnhart.

B.     Barbara Patton

27.     During Barbara Patton's employment with Defendant from sometime in 2012 through September 2014, Defendant engaged in unlawful employment practices at its Greensboro, Georgia restaurant, in violation of Section 703(a) of Title VII,  42 U.S.C. 2000(e)-2(a). Specifically, Defendant subjected Patton to sexual harassment that created a sexually hostile work environment because of her sex (female).

28.    The Owner regularly showed Patton sexually offensive pictures or videos.

29.    On at least one occasion, the Owner showed Patton a video of a sexual cartoon.

30.    The Owner also showed Patton photos of penises. When he showed Patton the pictures, the Owner asked Patton what she thought of the pictures and/or if she liked the pictures.

31.    The Owner regularly made unwelcome and offensive sexual comments to Patton about other female servers. For example, the Owner told Patton that Claimant Barnhart had sex in the restaurant cooler. On at least one other occasion, the Owner told Patton that another female server performed oral sex on a male employee in a restaurant booth.

32.    The Owner regularly made unwelcome and disparaging comments to Patton about women's weight and attractiveness. For example, on one occasion, the Owner showed Patton a cell phone video he took of an overweight woman exercising at the gym. The Owner expressed disgust at the woman's weight and her clothing.

33.    On more than one occasion, the Owner showed shirtless photos of himself to Patton while commenting about his physique.

34.    On one occasion in June or July 2014, the Owner was in the restaurant when he dropped his pants around his ankles and mimicked having sex with a flank steak.

35.    At all times, Patton did not welcome the conduct and comments alleged above.

36.    At all times, Patton was offended by the Owner's sexual comments and conduct.

37.    At all times, Patton objected to the Owner's sexual comments and conduct.

38.    On at least one occasion in or around 2014, Patton complained of the Owner's conduct to a co-owner of the restaurant but the sexual harassment continued.

39.    The sexual conduct described above occurred at least three times per month, but as frequently as weekly, and continued throughout Patton's employment until her separation in September 2014.  On occasion, the conduct occurred more than once per week.

40.    Defendant is liable for the practices complained of above because the conduct was committed by an individual who was a proxy for the employer. Defendant is also liable for the practices complained of above because the Owner

who created the hostile work environment was in Patton's direct line of supervision.

41.     The effect of the practices complained of above has been to deprive Patton of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex (female).

42.     The unlawful employment practices complained of above were intentional.

43.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally-protected rights of Patton.

C.     Brianna Parker

44.     During Brianna Parker's employment with Defendant from approximately November 2013 through September 2014, Defendant engaged in unlawful employment practices at its Greensboro, Georgia restaurant, in violation of Section 703(a) of Title VII,  42 U.S.C. 2000(e)-2(a). Specifically, Defendant subjected Parker to sexual harassment that created a sexually hostile work environment because of her sex (female).

45.     The Owner regularly showed Parker sexually offensive pictures and videos.

46.     The Owner also showed Parker photos of penises and women's bodies

on a weekly or bi-weekly basis.

47.     The Owner regularly made unwelcome and offensive sexual comments to Parker about her and her boyfriend, who was a food runner at the restaurant. For example, the Owner told other employees that Parker and her boyfriend had sex during their lunch break in an empty restaurant booth.

48.     The Owner regularly made unwelcome and disparaging comments about Parker's weight and sex life, including telling Parker's boyfriend that Parker was overweight and she needed to "get laid." The Owner also regularly asked Parker for details about her sex life.

49.     On one occasion, Parker walked into the kitchen and the Owner had his shirt off and pants down showing his body to the staff. On another occasion, the Owner took Parker's hand and put it on his abdomen so she could feel his abdominal muscles through his shirt.

50.     At all times, Parker did not welcome the conduct and comments alleged above.

51.     At all times, Parker was offended by the Owner's sexual comments and conduct.

52.     At all times, Parker objected to the Owner's sexual comments and conduct.

53.     On at least three to four occasions during 2014, Parker complained of the Owner's conduct to a co-owner of the restaurant but the sexual harassment continued.

54.     The sexual conduct described above occurred several times per month, but as frequently as weekly, and continued throughout Parker's employment until her separation in September 2014. On occasion, the conduct occurred more than once per week.

55.     Defendant is liable for the practices complained of above because the conduct was committed by an individual who was a proxy for the employer. Defendant is also liable for the practices complained of above because the Owner who created the hostile work environment was in Parker's direct line of supervision.

56.     The effect of the practices complained of above has been to deprive Parker of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex (female).

57.     The unlawful employment practices complained of above were intentional.

58.     The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally-protected rights of

Parker.

D.    <u>Lauryn Sanders</u>

59.    During Lauryn Sanders' employment with Defendant from approximately May 2012 through September 2014, Defendant engaged in unlawful employment practices at its Greensboro, Georgia restaurant, in violation of Section 703(a) of Title VII,  42 U.S.C. 2000(e)-2(a). Specifically, Defendant subjected Sanders to sexual harassment that created a sexually hostile work environment because of her sex (female).

60.    The Owner regularly commented to Sanders about the appearance of female employees' bodies and buttocks, including telling Sanders to look at other women's bodies and buttocks with him.

61.    The Owner regularly made unwelcome and offensive sexual comments to Sanders, including making comments about her buttocks and how attractive it was.

62.    The Owner regularly showed Sanders sexually offensive pictures, including pictures of women in lingerie and pictures of naked women. This was done weekly throughout Sanders' employment with Defendant.

63.    The Owner also showed Sanders photos of himself shirtless.

64.    On one occasion, the Owner took Sander's hand and put it on his

stomach and told her to feel his abdominal muscles.

65.    Sanders, who is Caucasian, was dating an African-American man when she worked for Defendant and the Owner made comments to Sanders about the size of her boyfriend's genitals. The Owner would also sometimes attempt to hand Sanders male enhancement pills and state, "maybe your boyfriend needs this."

66.    The Owner regularly made unwelcome and disparaging comments about Sanders's sex life with her boyfriend.

67.    Sanders was exposed to the Owner drinking from a cup shaped like a breast, which the owner would joke and laugh about.

68.    The Owner told Sanders that Claimant Barnhart had sex in the cooler.

69.    On one occasion, Sanders walked into the kitchen and the Owner had his shirt off and pants down and was showing his body to the staff.

70.    At all times, Sanders did not welcome the conduct and comments alleged above.

71.    At all times, Sanders was offended by the Owner's sexual comments and conduct.

72.    At all times, Sanders objected to the Owner's sexual comments and conduct.

73.   On at least three to four occasions in or around 2014, Sanders complained of the Owner's conduct to a co-owner of the restaurant but the sexual harassment continued.

74.   The sexual conduct described above occurred several times per month, but as frequently as weekly, and continued throughout Sanders's employment until her separation in September 2014. On occasion, the conduct occurred more than once per week.

75.   Defendant is liable for the practices complained of above because the conduct was committed by an individual who was a proxy for the employer. Defendant is also liable for the practices complained of above because the Owner who created the hostile work environment was in Sanders's direct line of supervision.

76.   The effect of the practices complained of above has been to deprive Sanders of equal employment opportunities and otherwise adversely affect her status as an employee because of her sex (female).

77.   The unlawful employment practices complained of above were intentional.

78.   The unlawful employment practices complained of above were done with malice or with reckless indifference to the federally-protected rights of

Sanders.

## **PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

A.      Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, successors, assigns and all persons in active concert or participation with it, from: (a) creating or maintaining a sexually hostile work environment; (b) failing to take remedial action in response to employee complaints of sexual harassment; and (c) other employment practices which discriminate on the basis of sex.

B.      Order Defendant to institute and carry out policies, practices, and programs which provide equal employment opportunities for women and which eradicate the effects of its past and present unlawful employment practices.

C.      Order Defendant to make Bobbie Barnhart, Barbara Patton, Brianna Parker, and Lauryn Sanders whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraphs 10-78 above, in amounts to be determined at trial.

E.      Order Defendant to make Bobbie Barnhart, Barbara Patton, Brianna Parker, and Lauryn Sanders whole by providing compensation for past and future nonpecuniary losses resulting from the unlawful practices complained of in

paragraphs 10-78 above, including emotional pain, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

      F.     Order Defendant to pay Bobbie Barnhart, Barbara Patton, Brianna Parker, and Lauryn Sanders punitive damages for its malicious and reckless conduct, as described in paragraphs 10-78 above, in amounts to be determined at trial.

      G.     Grant such further relief as the Court deems necessary and proper in the public interest.

      H.     Award the Commission its costs of this action.

## <u>JURY TRIAL DEMAND</u>

The Commission requests a jury trial on all questions of fact raised by its Complaint.

Dated:   November 3, 2016

                        Respectfully Submitted,

                        P. DAVID LOPEZ
                        General Counsel

                        JAMES L. LEE
                        Deputy General Counsel

                        GWENDOLYN YOUNG REAMS
                        Associate General Counsel

LYNETTE A. BARNES
Acting Regional Attorney
lynette.barnes@eeoc.gov

NEDRA D. CAMPBELL
Acting Supervisory Trial Attorney
nedra.campbell@eeoc.gov

U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St., SW, Suite 4R30
Atlanta, Georgia 30303
Telephone:  (404) 562-6818
Facsimile:   (404) 562-6905


*/s/Steven A. Wagner*
STEVEN A. WAGNER
Trial Attorney
Georgia Bar No. 000529
steven.wagner@eeoc.gov

SAIRALAINA MONTESINO
Trial Attorney
Georgia Bar No. 940665
sairalaina.montesino@eeoc.gov

U.S. Equal Employment Opportunity
Commission
Atlanta District Office
100 Alabama St., S.W., Suite 4R30
Atlanta, Georgia  30303
Telephone:  (404) 562-6897
Facsimile:   (404) 562-6905

17